Good morning. Good morning, Your Honors. Elizabeth Boggs on behalf of Plaintiff and Appellant Kevin Fields. I'm also here with my colleague, Karina Smith, and with your permission, I will be addressing the first issue in our briefing regarding the absence of Witness Mack at trial, and Ms. Smith will address the second issue in our briefing. Also, with your permission, I'd like to reserve two minutes of time for rebuttal, which we will try to split if possible, so I'll keep an eye on the clock. Thank you. Witness Anthony Mack had the cell next door to Plaintiff Kevin Fields. Before trial, the District Court determined that Mr. Mack was a necessary and material witness and ordered his presence at trial. On the day of trial, Mack refused to appear. The District Court abused its discretion when it refused to enforce its order that Mack appear for trial. You mean extract him? Your extracting him from his cell. However, it's also possible that the mere threat of cell extraction or some other action by the judge could have induced Mr. Mack to attend. Some other, like what? Please? The judge could have threatened to hold Mr. Mack in contempt or, you know, done something else, but here we have nothing other than the judge simply requesting his presence and when he refused. And in the discussion in the record, was extraction discussed? Yes, it was. The District Court, excuse me. Go ahead. The District Court suggested that extraction could be a possibility. Mr. Fields responded that he didn't think that Mr. Mack would actually need to be extracted from his cell, but the District Court refused to consider it. Did Mr. Fields ever say, well, if he won't come to court, then let's go take his deposition? Your Honor, no, this was on. How about let's take his testimony by telephone, anything like that? No, Mr. Fields didn't suggest that. So the whole case comes down to whether or not there should have been a cell extraction, given the way the posture of the case is presented. A cell extraction or the threat of a cell extraction or the threat to hold him in contempt or some steps further than, will you come? No, I won't. Did they hold him in contempt? The Court never held him in contempt. No. Did Mr. Fields request hold him in contempt? He did not expressly request that. So again, my question comes down to, this is kind of a binary situation. Cell extraction or no cell extraction is the way this case was presented to Judge Beck. Your Honor, I don't think that this was presented in a binary way. Mr. Fields was representing himself. He was pro se. Well, regardless whether he was representing himself or not, did he offer any other alternative? No, he did not. Okay. Counsel, my question is, oh, forgive me. Please. Go ahead. My question is whether this testimony from the neighboring prisoner was cumulative. It sounds like he was going to testify that he would overheard these conversations, but there really isn't a dispute in the record that I can see about whether or not Fields reported this condition in his cell. Well, there is a dispute in the record over what the substance of the conversations was between Mr. Fields and, for example, Defendant Marsh. Defendant Marsh claimed that he offered to move Mr. Fields from his cell, and Mr. Fields refused. Mr. Fields says that never happened. In addition, his testimony would have been there to corroborate Mr. Fields. As the plaintiff, Mr. Fields obviously had an interest in presenting his own side of the story, and he had no third-party witness who could support him. What about Ransom? Witness Ransom was not present in the cell block with Mr. Fields. He overheard different conversations that occurred in the prison yard, but he lived in a different part of the prison. The problem, it seems to me, with Mack is that it doesn't indicate that Mack overheard anything. It says he's his neighbor in his cell, but there's nothing in the record that says he overheard any conversations. So why isn't this just no harm, no foul, no abuse? Well, Your Honor, Mr. Fields did state that Witness Mack was an eye and ear witness to everything that occurred between him and Defendant Marsh. Counsel, could I stop you there? I don't know what that means. Could he see inside the cell, or was he an eye and ear witness to what, to the guards standing out there? I can't – the briefing doesn't give me a picture of this situation. Mr. Fields was not particularly clear on this point on the record below. We know that he had the cell next door. He never explicitly said that he saw the condition of Mr. Fields' cell. We can probably infer that because he had the cell next door, but Mr. Fields was not actually there. Kagan, I'm sorry to interrupt you on that, because we don't know if there was any view sideways, and typically there wouldn't be, and that's my problem. So when he said eyes and ears, I don't want your time to tick away. It just sounds like you don't think I'm missing anything on the record. We don't know what that means. Is that right? That's correct. Okay. So but it's clear that Fields thought that this – that Mack at least heard him report the condition. Is that it? Yes. Yes. He – that Mr. Fields was very insistent, at least, that he had overheard conversations between them. Okay. I've interrupted you. You're answering Judge Wallace's question. I just – I wanted to make sure we understood that point. Judge Wallace, if you'll forgive me, I don't quite remember your question. Oh, it's fine. I think it's fine. Was there anything from Mr. – from Mr. Mack about what Mr. Mack would have said? From Mr. Mack himself? Yes. No. There was – he didn't have a deposition taken in this case, and there was nothing from him. There was no declaration or anything? No, Your Honor. So for all we know, we could extract it from the cell, and he could come to court and say, I didn't hear anything or see anything or remember anything? That's possible, but we don't have anything in the record, and it's contrary to what we have. You wanted to have your colleague have some time, too? Yes, Your Honor. Thank you. Thank you very much. Good morning. Good morning, Your Honors. Carina Smith, also on behalf of Plaintiff and Appellant Kevin Fields. Thank you, Ms. Smith. Federal Rule of Civil Procedure 17 requires courts to protect incompetent litigants by either appointing a guardian ad litem or issuing other appropriate orders. This Court has clarified what Rule 17 requirements are as it pertains to incompetent litigants, and particularly pro se litigants. In United States v. 30.64 acres of land, this Court held that district courts must inquire into a litigant's competence. What's it take to trigger that? That's what your case boils down to. If a litigant who is not represented raises an issue that demonstrates that he might be incompetent, I believe that raises... I mean, did he say crazy things? Did he say he thinks he's the Pope or he wants L&M stricken from the alphabet or anything like that? I mean... No, Your Honor. He didn't say anything particularly crazy, but he was demonstrably affected. He was forgetting things. The judge recognized that he had forgotten parts of his declaration that he needed to testify to in order to win his case. But the judge reopened and let him testify to those things? Yes, Your Honor. The judge reopened, which was a nice accommodation, but it doesn't meet the district court's requirement to inquire into Mr. Field's competence. If that duty is triggered, and that's why I need to know, what is your best argument that that duty was triggered by what was happening in the courtroom? Remember, we're appellate court judges, so we don't have the eyes and ears that the judge did on the bench. Right, Your Honor. Mr. Field's notified the court five times that he was affected by his morphine prescription, and the court recognized that he was... What did he say specifically? Didn't he just say, I've taken morphine? Yes, on the first occasion, he notified the court that he had taken morphine, so he wasn't expected to need certain accommodations or for the court to go slow. On another instance, he... He didn't indicate he couldn't go ahead. He said just he isn't up to speed. But he was taking this medication pursuant to a doctor because of a prior injury. Exactly. He had had surgery, and so he was taking morphine because of it. And on other occasions, he notified the court that I need to stop my testimony right here because I can't focus anymore, so can we please stop my testimony? And he interrupted himself. Anything in the record about what the doctor prescribed morphine thought? No, there's nothing on the record about that. But I believe that the district court had a duty to inquire into what is your prescription for? Can you forego taking it in order to appear at trial competently? Counsel, on the first day, the judge said, after he was informed that this man was taking morphine, he said, it seems to me you're keeping up fine just so far. Just fine so far. Mr. Field said, yes, I'm trying. And the judge said, no, it seems like you are. You're tracking pretty well. So at this point, he's informed, but he thinks the guy is doing pretty well. And then on the next day, the judge said you seem a lot more on the ball this morning. So it seems to me there's certainly indications the judge was monitoring this situation as the case unfolded. And, of course, there's a jury there, so it's no small thing to just scuttle a trial. And then when he really had a problem, whether he forgot or I don't know what he did, but he didn't testify fully, the judge reopened and let him testify even from his declaration, I think. Yes, Your Honor. That is correct, but the judge has no way of knowing without inquiring whether Mr. Field was competent during the entirety of the Apollese testimony. Right. And, again, your time is ticking, but people come to court having taken some medication all the time. And so the test — I don't have any problem with the test that you've articulated. It's just the question is at what point does that trigger? Judges don't have to jump through those hoops every time somebody comes to court having taken a prescription medication. I believe it can be a sliding scale of the level of inquiry. But if a litigant is pro se and has notified the court that his mind might be affected and demonstrated that his mind has been affected, as the court observed here, I believe that triggers the duty. Okay. Just one more question, if I might. Where's the time? Where's the point where it was triggered in the transcript? Please, I'll go back and review it. But where do you think the bill was wrong? When he said that he had forgotten to ask about a certain juror, I believe that was the second time he notified the court. At that point, the judge should have inquired, even though the judge recognized that we're not going to get to Juror 20, there are only going to be eight. So you're talking about during jury selection on day one? Thank you. Thank you very much, Ms. Smith. Oh, Judge Wallace. Another question. I looked at Federal Rules of Procedure 17, what is it, C? Yes. It seems to me the judge followed that fairly well. I can't find any quarrel with it. Do you think he followed 17C appropriately? I do not, Your Honor. Rule 17C requires he issue an appropriate order if it rises to the level of incompetence to protect a litigant, which he did not do. Thank you. Thank you, Ms. Smith. Good morning. May it please the Court, Nia Nguyen for Defendant's Appellees. Thank you. Unlike this Court's recent decision in Norman v. Barnett, where the District Court did nothing when the inmates took the stand and refused to answer questions, in this case, here's what the District Court did. When the Court found out that Mack wasn't coming to court, the Court asked prison officials to find out why Mack refused to comply and to try again the next day. When the Court found out that Mack refused to come to court, and because of an ongoing legal-ish matter, the Court instructed the COs to say, okay, let's try again. Tell the inmate that the judge wants you here, regardless of what he wants. The judge said, tell him to, you know, write him up, that the judge is going to have contempt proceedings if he doesn't comply. The judge noted that I'll send instructions to the officers what we mean by if circumstances permit. So the District Court did make efforts to get Mr. Mack to come to court. The fact that Mr. Mack didn't come to court doesn't mean that it was an abuse of discretion by the District Court. And the takeaway from the Norman decision is that the Court at least has to try to get the inmate to comply. In this case, the Court satisfied its obligation to get Mack to comply. Let me ask you this. Suppose, this is a hypothetical, but suppose this guy's on death row. Mr. Mack? Yeah. I don't know. Okay. What about the other, oh, what about Mr. Fields? Do you know where he is? I don't know. In any event, the guy's in prison. You know, saying you're going to hold him in contempt is kind of a namby-pamby sort of penalty for somebody who's already in prison. What else could the judge have done if it had been requested? Could the judge have asked, you know, ordered that we adjourn the trial for a little bit and go down to the prison and take his deposition with a court reporter? Perhaps, but, I mean, the issue was brought up right in the middle of trial. So it would have been a waste of time. Well, that's when we found out the guy's not going to show up, so. But there's no need to do that in this particular case, because Mr. Mack's testimony, we don't know what he would have said. I mean, Mr. But that's the problem. He issued the subpoena, so when this litigant was preparing for trial, he wouldn't have been on notice that he needed to take the deposition or arrange for telephonic testimony. He didn't find out until day one of trial that that subpoena wasn't going to be enforced. But Mr. Fields could have talked to them before trial, because they were at the same prison, same building. Let me ask the question a different way. What should a judge do when a witness in prison or out of prison says, I don't want to honor the subpoena? The judge should just say, okay, never mind. We'll just tear it up, forget it. Well, the judge can't do that, but at least have to make some effort to get the prison officials to coax the inmate into complying. Okay, and if he coaxes them and says, I don't feel like coming to court today. Well, in the Norman decision, this Court said that sometimes the district court's efforts will prove fruitless. The district court, and the takeaway from the Norman decision is you've got to try, and the district court did in this case. Why didn't, I mean, suppose this is not what happened, but suppose the, suppose Fields said, let's try to get him on the telephone. That could have been an option, but Mr. Fields never asked for that. In fact, he insisted at pages 277, 278, 232, that the court so extract him. He wanted Mr. Mack in court. What about, did Judge Beck offer you the chance to stipulate to a statement that what Fields might have said? Correct. The district court asked defense counsel if he would stipulate to his testimony. The problem with that is we didn't know what he was going to say. So it's kind of, it would be unfair for us to even stipulate to that. I think the more difficult problem I'm having with this case has to do with the second part. I don't know how many guilty pleas I took when I was a trial judge, but they were in the hundreds, and I never took a guilty plea unless I found out about their medication. I checked on it if they had been taking medication. In this instance, the person was taking pretty heavy medication, morphine. I mean, we put people in jail for using that stuff unless they have a prescription. It has a tendency to slow a person down, and of course it numbs their body. That's the purpose of it, but it can have a great effect. I followed the process of looking into anything like that very carefully. How did the district judge here make a determination by questioning or otherwise to determine the actual effect of this morphine upon the defendant? By the defendant, I mean the prisoner. Well, there's no way for the district court to really know how it's affecting Mr. Fields, but the district court was observing Mr. Fields, and he was performing pretty okay, and he was following the district court's orders. But here's what we know from the record. According to Mr. Fields, he had his surgery in April of 2013, and that he was taking morphine right afterward. Then he filed a motion for a trial continuance on the basis that he was taking morphine from the surgery. The district court held a telephonic hearing, and over a defendant's objection, granted a 60-day continuance, moved the trial from June 4th to August 5th. And during that time, Mr. Fields, while he's on morphine, he filed a motion in limine. He filed a motion to address inmate witnesses in prison cackies, which the district court granted. He responded to the district court's order regarding whether mediation would be suitable. He also filed a motion for a continuance. He participated in that telephonic conference with the district court. He filed a consent to magistrate jurisdiction. He submitted a proposed voir dire. And he tried the case on August 5th and August 6th. So there's nothing to give the court any inkling that there's a substantial question of his incompetence. In fact, the compelling facts in the 30.64 case, the Allen v. Calderon case, and the district court Golden Gate case provide an instructive contrast to this case. In the 30.6 Acre case, the property owner submitted a detailed government report saying that he's totally disabled, both physically and mentally. In the Allen case, the habeas petitioner submitted a letter from a psychiatrist and declarations saying that he's mentally ill. And the psychiatrist said that he was suffering from chronic schizophrenia. But counsel, why is that helpful if we have a pro se prisoner here? And there's not nothing in the record here. There's statements. There may not be enough. But there's statements made by the judge about what he's observing that indicate there's something here. The judge knew there was a problem. The judge articulated that when he reopened the evidence. So there's not nothing. We have to decide whether it's enough. Okay. Even if there's a substantial question about his incompetence, it doesn't mean that you have to appoint a guardian. The court can take other steps to protect the litigant's interest. And for example, when the court reopened testimony, that's one way to protect his interest. So that way he had a full day in court. The jury heard his entire testimony. Do we know from the record how long before the trial that he had at last had morphine? We don't know. He didn't submit any medical records to substantiate his claim. What we do know is that. If somebody said, I'm on morphine, of course, the next question is, when did you last have a dose of morphine? That question wasn't asked. He told the court on day one that he took morphine that morning. He told the court on day two that he did not take morphine. Right. On day two, he said he didn't take it. Correct. I think he said it was timed release or something. Extended release. Right. But it's clear he didn't take it on day two, whatever that means. Yeah. Correct. Right. Any other questions, Judge Wallace? No, thank you. Thank you very much, Mr. Smith. Thank you. Ms. Boggs, I think. Ms. Smith, who's going to wrap up? Yes, Your Honor, I'll keep it brief because I know we're already over time. So just briefly, I wanted to address the steps that the district court judge took. All we know that the district court judge did was say, was issue a writ of habeas corpus ad testificandum on the first day for Mr. Mack to appear at trial. That was ignored. After some back and forth, the judge said, I'll have a conversation with prison officials. We don't know what that conversation was with the colleagues of defendants in this case. All we have in the record is a second writ of habeas corpus ad testificandum issued the second day that says, if circumstances permit. And again, I mean, as Your Honors were pointing out, this isn't a strong incentive for a recalcitrant witness to attend trial. It's merely a request and a second request that went ignored. So I'll turn the lectern over to my colleagues. Thank you, Ms. Boggs. Ms. Smith. Thank you, Your Honors. I will also be brief. Mr. Nguyen pointed out that in some of the other cases cited, the litigants were able to produce documents and records of their incompetence. But in this case, as you pointed out, in a trial setting, Mr. Fields didn't have the opportunity to present such documentation. But that doesn't lessen his right to be a competent litigant. So because the court failed to inquire into the intermittent nature of the effects of his morphine, we ask that this court reverse and remand. Thank you. The case just argued is submitted. Ms. Boggs, Ms. Smith, we want to thank you especially for taking this case on a pro bono basis and for doing it so well. Yes, thank you. Our system is that we thought this person needed lawyering, and we are able to handle the 50% of pro se cases because we have counsel that are willing to participate. You did an excellent job. Thank you for the court. Thank you.
judges: Wallace, Silverman, Christen